# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

---

Present: The Honorable R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| | | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings: (IN CHAMBERS) Order Re: Defendants' Motion to Dismiss [77]**

## I. INTRODUCTION

On January 16, 2026, Altshares Event-Driven ETF ("Plaintiff") filed a Class-Action Complaint ("CAC") against Endeavor Group Holdings, Inc. ("Endeavor"), Ariel Emanuel ("Emanuel"), Patrick Whitesell ("Whitesell"), Mark Shapiro ("Shapiro"), Egon Durban ("Durban"), Ursula Burns ("Burns"), Fawn Weaver ("Weaver"), Stephen Evans ("Evans"), Jacqueline Reses ("Reses"), and Silver Lake Group, LLC ("Silver Lake") (collectively, "Defendants") alleging securities fraud. (ECF No. 42.)

Presently before the Court is Defendants' Motion to Dismiss. (ECF No. 77.) For the following reasons the Court **GRANTS in part** the Motion and **DISMISSES** the Exchange Act Section 10(b) and Securities and Exchange Act ("SEC") Rule 10b-5 claim regarding certain statements and the Exchange Act Section 13(e) and SEC Rule 13e-3 claim in its entirety. The Motion is **otherwise DENIED**.

## II. FACTUAL BACKGROUND

The following is alleged in the CAC:

Endeavor is a global sports and entertainment conglomerate. Following Endeavor's 2021 IPO, Emanuel, Whitesell, Durban, and Evans (the "Executive Committee Defendants") assumed the four seats on Endeavor's Executive Committee ("EC"), whose approval was required for major corporate transactions, like mergers and acquisitions. In late October 2023, the EC decided that Endeavor was evaluating strategic alternatives for the company. Silver Lake then announced that it was working toward making a proposal to take Endeavor private. In late February 2024, the EC adopted resolutions to form the Special Committee ("SC"), which consisted of Burns and Reses (collectively, the "Special Committee Defendants").

On March 4, 2024, Silver Lake and Endeavor discussed the final financial projections used to justify the merger consideration. On March 12, 2024, the SC retained Centerview Partners, LLC

("Centerview") as its independent financial advisor on the merger. Throughout the spring of 2024, the SC faced a pressure campaign by Silver Lake, Emanuel (Endeavor's Chief Executive Officer), and Shapiro (Endeavor's President and Chief Operating Officer) (collectively, with Emanuel, the "Officer Defendants") that compressed negotiations into a four-day window over Easter weekend with expiring offers, direct calls to SC members and Centerview during SC meetings, and threats of significant disruption if a price was not agreed to by April 2.

On April 2, 2024, Centerview issued its Fairness Opinion. In its Fairness Opinion, Centerview opined that the $27.50 Merger Consideration was fair. That same day, the SC recommended the EC approve the merger at $27.50 per share, and the merger agreement was then signed. On January 15, 2025, Defendants filed the required Information Statement and Schedule 13E-3 transaction statements, representing that the merger was fair and in the best interests of public shareholders. More specifically, in the Information Statement, Defendants stated that "[a]t a meeting of the Executive Committee held on April 2, 2024" the EC determined that the merger was fair and in the best interests of the shareholders. (CAC ¶ 172.) However, these statements failed to account events that occurred post-issuance of the Fairness Opinion but before issuance of the Information Statement. Namely, Defendants failed to disclose that, collectively, Endeavor's sports gaming businesses, the Sports Assets and OpenBet, were sold for significantly more than the value assigned to the assets supporting Defendants' claims about the merger's fairness. Defendants' statements also ignored the surge in the value of Endeavor's TKO Group Holdings, Inc. stock at merger signing. The merger closed on March 24, 2025.

## III. <u>JUDICIAL STANDARD</u>

### A. <u>Rule 12(b)(6)</u>

To survive a motion under Federal Rule of Civil Procedure ("Rule") Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges enough facts to permit a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

**B. Rule 9(b) and the PSLRA**

Claims for securities fraud are subject to the heightened pleading standards of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Tellabs*, 551 U.S. at 313–14. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). "The PSLRA imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

**IV. DISCUSSION**

**A. Section 10(b) of the Exchange Act and SEC Rule 10b-5**

Section 10(b) of the Exchange Act and SEC Rule 10b-5 make it "unlawful . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," including by making "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading." 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5. To successfully plead a claim under these provisions, a plaintiff must allege: (1) falsity, i.e., a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). All Defendants challenge falsity, scienter, reliance, and loss causation. The Court addresses each element in turn.

1. *Falsity*

Under the PSLRA, a well-pled allegation of falsity must identify: (1) each false statement alleged to have been misleading; (2) the reasons why those statements are misleading; and (3) if the allegation is made on information and belief, the particular facts that give rise to the belief. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). The allegations must create a strong inference of falsity and allege facts giving rise to this inference "with particularity." 15 U.S.C. § 78u-4(b). A misstatement is only actionable if it is both false and material—it is "not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant." *See Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). And a statement that is merely incomplete is not by itself actionable; rather, the incompleteness must render the statement misleading or untrue. *Id.* at 239 n.17. Often, a "statement will not mislead even if it . . . does not include all relevant facts," because a statement misleads only if it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

"affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Plaintiff alleges that Defendants made certain misstatements that were false and misleading. The Court analyzes each alleged misstatement in turn.

a. *Fairness Statements*

Plaintiff challenges a group of statements made in the Information Statement, asserting that the merger was fair and in the best interests of shareholders ("Fairness Statements"). Plaintiff argues that Defendants falsely asserted they believed that the Merger Consideration was fair, when in actuality, Defendants omitted material facts about intervening developments that made the Merger Consideration more valuable than what it was purported to be. Defendants argue in response that Plaintiff fails to plead falsity because the Fairness Statements are appropriately caveated and are inactionable opinions.

The premise of Plaintiff's challenge to the Fairness Statements is that Defendants could not in good faith believe that the merger was fair because developments that occurred in the months between the issuance of the Fairness Opinion and the Information Statement (which contained the Fairness Statements) resulted in a dramatic increase in Endeavor's value. Therefore, when Defendants made the Fairness Statements in early 2025, Plaintiff argues that Defendants were purporting to represent that they believed the Merger Consideration was fair as of early 2025 as if grounded in then-current assumptions, when the Fairness Statements actually relied on stale financial information as of April 2024.

Plaintiff's argument in support of its CAC fails because it ignores that the Fairness Statements are adequately caveated and therefore are not false. The Fairness Statements specifically state that "at a meeting of the Executive Committee held on April 2, 2024," the EC "determined that the Merger Agreement and the Transactions including the Mergers, are fair and in the best interests of, the Company . . ." (CAC ¶ 172.) The first part of the previous sentence is particularly important as it clearly states that Defendants were representing a point-in-time assessment, specifically that Defendants rendered the opinion that the merger was fair as of April 2, 2024. In other words, Defendants clearly stated in their Fairness Statements that they believed the merger was fair *as of April 2024*, not that it was fair as of January 2025, when the Statements were made.

Furthermore, the Centerview Fairness Opinion, upon which the Fairness Statements rely, states: (1) it was rendered as of "April 2, 2024" and "based on financial, economic, monetary, currency, market and other conditions and circumstances as in effect" on that date; (2) Centerview relied on market data "on or before March 28, 2024"; and (3) Centerview assumed no "obligation or responsibility to update,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| --- | --- | --- | --- |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

revise, or reaffirm." (Information Statement at 76, C-1, C-4, ECF No. 77-3.)[1] These caveats make it clear to the average investor that the Fairness Statements were made in reliance on the Fairness Opinion and that the Fairness Opinion reflected a statement as to the Merger's fairness as of April 2, 2024. As a result of these caveats, Defendants did not make false statements by way of their Fairness Statements because such Statements did not imply that the merger was fair as of January 2025, when the Fairness Statements were made, but clearly state that the merger was fair as of April 2024. The Ninth Circuit "expect[s] reasonable investors to pay attention to caveats and disclaimers." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134 (9th Cir. 2025). That Plaintiff believes that a better process would have been to update the Fairness Opinion to reflect fairness at the time the Fairness Statements were made does not turn the Fairness Statements into actionable false misstatement. Thus, the Court cannot find that omitting Endeavor's increase in value was such an omission that "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists," because Defendants adequately disclosed that their Fairness Statements were made in reliance on a state of affairs in April 2024. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Accordingly, Plaintiff has failed to plead falsity as to the Fairness Statements.

b. *Other Statements*

Defendants also challenge whether Plaintiff adequately pled falsity as to three statements associated with (1) Rollovers; (2) the Special Committee Process; and (3) the Tax-Receivable Agreement ("TRA") Disclosures.[2] The Court addresses each in turn.

i. Rollovers

First, Plaintiff alleges that Defendants failed to "adequately disclose the Officer Defendants' earnings under the Merger by misleadingly valuing their Endeavor equity rollover positions at Merger Consideration when those positions were significantly more valuable." (CAC ¶ 206.) Defendants argue that Plaintiff disputes value methodology of the rollover positions, not the actual disclosures themselves. However, Plaintiff does not take issue with the value methodology of the rollover positions, but rather, alleges that the increase in value of the rolled-over Endeavor equity was not disclosed, making the rollover statements misleading. (*See* CAC ¶ 211 ("By the time the Information Statement was issued, the

---

[1] Although these statements were not specifically alleged in the Complaint, the Court can consider the Information Statement under the incorporation-by-reference doctrine. *See Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

[2] Defendants also challenge Plaintiff's claims as to the OpenBet Disclosures and the Centerview Purported Conflicts. However, Plaintiff does not defend these claims in its Opposition. Accordingly, Plaintiff waives any argument as to those allegations and as such concedes these claims. *See Pers. Elec. Transports, Inc. v. Off. of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009); *Chamndany v. Harding*, 2022 WL 19263348, at *15 (C.D. Cal. Oct. 4, 2022) ("[A] plaintiff who does not respond to a defendant's argument on a motion to dismiss may be deemed to have conceded that argument.") The Court thus does not address these claims and deems the claim as to the OpenBet Disclosures and the Centerview Purported Conflicts as **DISMISSED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
|---|---|---|---|
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

Officer Defendants' rolled over Endeavor OpCo units were worth . . . more than they were valued at under Centerview's Fairness Opinion, adjusting for the asset sales and TKO's increased stock price only.").) Taking the Complaint's allegations as true, if Defendants failed to disclose the rollovers' increase in value and instead disclosed rollovers that were undervalued, such an omission is material and would mislead an investor. As such, the Court finds Plaintiff has adequately pleaded falsity as to the rollover statements.

ii. Special Committee Process

Plaintiff alleges that the Information Statement's "description of the Special Committee as 'independent' was materially misleading" because it omitted the supposed "pressure campaign" by Silver Lake and insiders to force SC's merger recommendation. (CAC ¶¶ 225, 226.) Defendants argue that Plaintiff sufficiently disclosed details about the SC's negotiations and that failure to include Plaintiff's preferred details does not amount to securities fraud. However, the portions of the Information Statement that Defendants cite to for support that they included adequate disclosures do not contain the information that Plaintiff contends was omitted. (*Compare* Information Statement at 49–64 *with* CAC ¶¶ 225–40.) Unlike *Brody*, which Defendants compare this case to, the disclosures and "the reasonable inferences one could draw from that information" were *not* "entirely consistent" with Plaintiff's preferred disclosures. 280 F.3d at 1007. For example, Plaintiff identifies numerous omissions in the CAC in which Plaintiff failed to disclose Silver Lake's imposed compressed transaction timeline that would undermine the notion that the SC's process was independent. (*See* CAC ¶¶ 225-40.) Defendants did not disclose any of these details, or anything that would reasonably hint at these details, making it difficult, if not impossible, for investors to understand the alleged truncated timeline that Silver Lake imposed and the effect it had on the SC. Ultimately, the Court finds Plaintiff has adequately pleaded falsity as to the statements related to the SC's process.

iii. TRA Disclosures

Plaintiff alleges that "Defendants made materially false statements and omissions of material fact concerning the TRA amendment and its diversion of value away from unaffiliated shareholders." (CAC ¶ 219.) Defendants argue that they disclosed the tax-saving structure of the TRA and that the Information Statement expressly disclosed that the parties would "use their respective reasonable best efforts to amend the [TRA]" if TRA benefits were affected. (CAC ¶ 221.) However, none of these disclosed statements concerns the information that Plaintiff contends was misleadingly omitted, which was that the TRA Amendment allegedly diverted significant value away from unaffiliated shareholders. (CAC ¶ 224.) Again, this omission materially affected the amount of information available as it does not discuss the effect of the TRA on unaffiliated shareholders, and thus Plaintiff has adequately pled falsity as to the TRA disclosure statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
|---|---|---|---|
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

2. *Scienter*

To adequately allege scienter, a plaintiff needs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The "'required state of mind' is a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness.'" *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (quoting *Schueneman v. Arena Pharm.*, 840 F.3d 698, 705 (9th Cir. 2016)). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. The "inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.

Plaintiff concedes that it fails to plead motive behind making false statements. The Ninth Circuit has held that "the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter" and that only if the CAC "otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness [should the Court] overlook" failure to allege motive. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). The Court thus goes on to evaluate whether Plaintiff, absent alleging motive, has met its burden to show this strong inference of scienter for each group of Defendants.

a. *Officer/EC Defendants*

Defendants argue that Plaintiff has only made generalized statements that Defendants were involved in the merger, and that because of this involvement, Defendants had to have knowledge about the falsity of their statements. It is true that "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009), *as amended* (Feb. 10, 2009). However, Plaintiff has gone further than alleging general corporate knowledge. As to the Officer/EC Defendants, Plaintiff alleges the EC managed the strategic review from the outset (CAC ¶ 79), approved relevant projections (CAC ¶ 99), and had members actively involved in Merger negotiations. (*See, e.g.*, CAC ¶¶ 110-111, 113, 121, 124–27.) These are specific allegations that allege that the EC had intimate awareness of the merger's details and that therefore they knew of the alleged falsity of their statements, which differ from allegations that they only had some general awareness of the merger. *Cf. In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (finding no scienter when plaintiffs allege that key officers had requisite knowledge just by virtue of their hands-on positions).

Officer Defendant Shapiro was likewise familiar with Endeavor's increase in value and was directly involved in the review and approval of materials provided to the SC. (CAC ¶¶ 123, 254.) These allegations also suggest that because of Shapiro's specific involvement in the merger, he must have possessed knowledge as to the falsity of the statements made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
|---|---|---|---|
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

b. *SC Defendants and Weaver*

Plaintiff argues that the SC members and Defendant Weaver were privy to the details of the Merger, and that therefore they must have known that the statements they were making were false. Plaintiffs relies on the "core operations doctrine," which is "a scienter theory that infers that facts critical to a business's core operations or an important transaction are known to a company's key officers" *Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc*, 166 F.4th 805, 831 (9th Cir. 2026) (internal quotations omitted). Core operations allegations support a strong inference of scienter in three circumstances: "(1) when they, along with other allegations, support a cogent and compelling inference of scienter" as part of a court's holistic review of a plaintiff's allegation; "(2) when [the allegations] are themselves particular and suggest that the defendants had actual access to the disputed information; and (3) in the 'rare circumstances' when [the allegations] are not particularized, but 'the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter.'" *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021) (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014)).

This case falls into the third rare circumstance. Weaver and SC members Burns and Reses were members of the Endeavor Board. As board members, it is probable that they were aware of all significant developments concerning a major transaction such as the one alleged in this case. It would be "absurd" to suggest that key management would not be aware that the Rollover statements, for example, were worth immensely more than they were disclosed as, or that management would not be aware of the ongoing pressure campaign that insiders participated in.

c. *Silver Lake*

Plaintiff argues that Silver Lake possessed scienter because (1) it signed and jointly filed the Schedule 13E-3; (2) it was party to agreements executed with the Officer Defendants; (3) it was familiar with TKO's prospects and knew about the lowered Final Projections used to justify Merger Consideration; and (4) that its co-CEO (Durban) and managing director (Evans) served on the EC which issued the Information Statement. These allegations are particularized and give rise to a strong inference of scienter.

On balance, because the inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent," the Court finds that Plaintiff has adequately pled scienter. *Tellabs*, 551 U.S. at 314.

3. *Reliance*

"Reliance by the plaintiff upon the [misrepresentations] is an essential element of the § 10(b) . . . action[.]" *Stoneridge*, 552 U.S. at 159. Here, Plaintiff invokes two theories of reliance: the fraud-on-the-market presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988), and the presumption of reliance articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972). Since the Court finds that the fraud-on-the-market presumption of reliance articulated in *Basic* applies, the Court only analyzes that theory.

As the Supreme Court put in *Basic*:

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."

485 U.S. 224, 241–42 (citing *Peil v. Speiser,* 806 F.2d 1154, 1160–1161 (3d Cir. 1986)).

Here, such a presumption applies. Plaintiff has adequately alleged that Endeavor common stock was traded on an efficient market and that all sellers of Endeavor common stock during the Class Period suffered injury when they sold Endeavor common stock at artificially deflated prices. (*See* CAC ¶¶ 257–58.) These were typical "investor[s] who b[ought] or s[old] stock at the price set by the market" and did so "in reliance on the integrity of that price" and "the belief that it reflects all public, material information." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). Defendants argue that *Basic* does not apply here because Endeavor traded at or above the Merger price throughout the Class Period, but Defendants ignore that no matter if Endeavor traded at or above the Merger price, if an investor buys or sells stock at the market price, his "reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b–5 action." *Id.* (internal quotations omitted). Plaintiff has adequately alleged reliance.

4. *Loss Causation*

Loss causation "is simply a variant of proximate cause," meaning "the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). Plaintiff makes two loss causations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

theories. The Court analyzes only the first loss causation theory, as it determines that it satisfies loss causation.

Plaintiff alleges that Defendants' false and misleading statements artificially deflated Endeavor's stock price during the Class Period, and that therefore, the Class sold their stock at artificially deflated prices. In support, Plaintiff alleges calculations of the degree to which TKO, Sports Assets, and OpenBet were undervalued in the assumptions supporting the Fairness Statements. (*See* CAC ¶¶ 7, 11, 16.) As opposed to the statements identified in *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020) as too speculative, here, the allegations are more detailed and go far beyond just a mere belief that the actual share price was higher than the merger consideration. Furthermore, Defendants are incorrect that under any theory of loss causation, the Ninth Circuit requires particularized allegations of market reaction to an alleged revelation. In fact "[r]evelation of fraud in the marketplace is simply one of the 'infinite variety' of causation theories a plaintiff might allege to satisfy proximate cause." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). In addition, Plaintiff has suffered an economic loss because Plaintiff sold shares at a market price less than it would have been absent Defendants' misrepresentations and omissions, even if there was no absolute loss. *See In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 7499375, at *10 (C.D. Cal. May 2, 2014) (holding "because Plaintiff has sufficiently alleged that the Merger harmed the earning potential of its Hot Topic shares, Plaintiff has met the economic harm requirement."). In all, Plaintiff has sufficiently pled proximate cause.

### B. <u>Burns, Reses, Shapiro, and Weaver</u>

Defendants argue that Burns, Reses, Shapiro, and Weaver should be dismissed from the case because they were not "makers" of the alleged misstatements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 144 (2011). However, Defendants ignore that Plaintiff has adequately pled scheme liability under SEC Rule 10b-5(a) and 10b-5(c), so who is a "maker" of such a statement is of no matter. *See In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1197 (D. Or. 2015) ("The issue of who is a 'maker' of any particular false or misleading statement is not relevant in a claim of scheme liability."). Plaintiff alleges that Defendants engaged in a scheme "to depress minority bargaining power and the value realizable by the unaffiliated public shareholders, while insiders captured future upside through rollovers and separate benefits." (CAC ¶ 2.) Defendants argue that scheme liability cannot be pled because Plaintiff does not allege conduct beyond the misrepresentations and omissions. However, the Ninth Circuit has considered this argument and explained that disseminating false statements alone can violate 10b-5(a) and 10b-5(c). *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021). Thus, Burns, Reses, Shapiro, and Weaver are proper defendants.

**C. Section 13(e) and SEC Rule 13e-3 Claim**

Federal courts have held that neither Section 13(e) of the Exchange Act nor Rule 13e-3 creates a private right for damages. *See, e.g.*, *Berg v. First Am. Bankshares, Inc.*, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985), *aff'd,* 796 F.2d 489 (D.C. Cir. 1986); *Boylan v. Sogou*, 2021 WL 4198254, at *13 (S.D.N.Y. Sep. 13, 2021). Section 13(e) does not expressly create a private right of action. 15 U.S.C. § 78m(e). Absent an expressly create private right of action, "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16 (1979). "[U]nless this . . . intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

To support its Section 13(e) and SEC Rule 13e-3 Claim, Plaintiff exclusively relies on *Howing Co. v. Nationwide Corp.*, 826 F.2d 1470, 1474–76 (6th Cir. 1987), in which the Sixth Circuit held that there is a private right of action under Section 13(e). In doing so, the Sixth Circuit analyzed whether Congress intended to create a private right of action in the contemporary legal context under Section 13(e) and answered in the affirmative. The Court notes that the Supreme Court has since rejected the legal underpinnings found in *Howing* and has stated it "never accorded dispositive weight to context shorn of text." *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). This Court joins other federal courts in holding that a private right of action for damages under Section 13(e) nor Rule 13e-3 exists. As such, the Court **DISMISSES** Plaintiff's Section 13(e) and SEC Rule 13e-3 claim.

**D. Section 20(a) Claim**

Section 20(a) of the Exchange Act provides for liability of a "controlling person." 15 U.S.C. § 78t(a). To establish a cause of action under Section 20(a), a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5, and then show that the defendant exercised actual power or control over the primary violator. *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 (9th Cir. 2000). Plaintiff brings the Section 20(a) claim against Silver Lake and the individual defendants. As discussed above, Plaintiff has shown a primary violation under Section 10(b) and Rule 10b-5.

Defendants concede that the EC Defendants were Section 20(a) "controlling persons" in their Motion. (*See* Mot. Dismiss at 17, ECF 77-1.) As to the non-EC Individual Defendants, the determination of who is a controlling person is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Howard,* 228 F.3d at 1065. "The traditional indicia of control are: having a prior lending relationship, owning stock in the target company, or having a seat on the board." *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *25 (S.D. Cal. Jan. 3, 2005). Shapiro is Endeavor's President and COO with significant Endeavor stock holdings and Weaver, Burns, and Reses were Endeavor Board

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00526-RGK-KS | Date | June 23, 2026 |
| Title | ***Altshares Event-Driven ETF v. Endeavor Group Holdings, Inc. et al.*** | | |

members. Their respective positions indicate their respective power to control corporate actions. Thus, Plaintiff has adequately alleged a Section 20(a) claim.

## V. CONCLUSION

Accordingly, the Court **GRANTS in part** Defendants' Motion to Dismiss. Plaintiff's Section 10(b) and SEC Rule 10b-5 claim is **DISMISSED** as to the Fairness Statements, OpenBet Disclosures and the Centerview Purported Conflicts. Plaintiff's Section 13(e) and SEC Rule 13e-3 claim is also **DISMISSED**.

**IT IS SO ORDERED.**